IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

JERRI ANN ADAMS                                                                        PLAINTIFF

                v.                              Civil No. 09-2162

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                        DEFENDANT

**MEMORANDUM OPINION**

I.      **Factual and Procedural Background**

Plaintiff, Jerri Ann Adams, appeals from the decision of the Commissioner of the Social Security Administration denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"), pursuant to §§ 216(i) and 223 of Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423(d), and § 1602 of Title XVI, 42 U.S.C. § 1381a, respectively (collectively, "the Act").

Plaintiff protectively filed her DIB and SSI applications on November 28, 2006, alleging a disability onset date of November 21, 2006, due to thrombocytopenia, hypothyroidism, back pain, depression, anxiety, and weakness. Tr. 51-54, 58, 129-36, 151-52, 156. At the time of the onset date, Plaintiff was forty four years old and possessed a GED. Tr. 14, 161, 540. She has past relevant work as a motel maid. Tr. 24.

Plaintiff's applications were denied at the initial and reconsideration levels. Tr. 69-75, 77-80. At Plaintiff's request, an administrative hearing was held on December 3, 2008. Tr. 10-50. Plaintiff was present at this hearing and represented by counsel. The ALJ rendered an unfavorable decision on February 4, 2009, finding that Plaintiff was not disabled within the meaning of the Act. Tr. 58-

68. Subsequently, the Appeals Council denied Plaintiff's Request for Review on December 5, 2009, thus making the ALJ's decision the final decision of the Commissioner. Tr. 1-4. Plaintiff now seeks judicial review of that decision.

## II.     Medical History

Plaintiff suffers from chronic low back pain secondary to a motor vehicle accident in March of 2000. Tr. 347-72. She suffered cervical, parascapular, and lumbosacral strains as a result of the accident. Tr. 354. X-rays of Plaintiff's cervical spine were within normal limits. Tr. 354. She was treated with pain medication, muscle relaxers, anti-inflammatories, electromuscle stimulation, and physical therapy. Tr. 347-72. In September 2000, Terry Brackman, D.O., noted that Plaintiff might require chronic pain and muscle relaxant medication and additional massage and physical therapy. Tr. 347. He did note that exercises, heat, and liniment did help. Tr. 347.

Plaintiff also has a history of low platelet levels, for which she was referred to Zaki Samman, M.D. Tr. 224-35. On July 22, 2004, Dr. Samman noted Plaintiff had previously had thyroid surgery and was taking Synthroid for hypothyroidism and Effexor and Xanax for panic attacks and anxiety. Tr. 234.

In 2005 and 2006, Plaintiff went to Murphy Medical Center with complaints of depression and anxiety, for which she given prescriptions for Prozac and Xanax. Tr. 238, 242. In April 2006, Plaintiff admitted being noncompliant with her Prozac. Tr. 246.

On March 20, 2006, Plaintiff presented to St. Edward Mercy Medical Center with pleuritic chest pain and difficulty breathing. Tr. 253-54, 488-89. She admitted smoking one pack of cigarettes per day. Tr. 253. Chest x-rays revealed mild hyperinflation, but no acute infiltrates. Tr. 252, 486. An EKG revealed nonspecific ST segment straightening, but was otherwise normal. Tr.

254, 483-85. Plaintiff was diagnosed with pleuritic chest pain and anxiety. Tr. 253-54.

In July 2006, Plaintiff underwent partial thromboplastin time ("PTT") testing, which confirmed a low platelet count. Tr. 243-44. On July 24, 2006, Plaintiff presented to the emergency room at St. Edward's with complaints of low platelets, bruising, and generalized weakness. Tr. 249. Her platelet count was 10,000, which was critically low. Tr. 474-75. She was assessed with idiopathic thrombocytopenia, treated with Prednisone, and admitted to the hospital for further treatment. Tr. 250-51. However, Plaintiff left the hospital against medical advice. Tr. 251.

Following her hospitalization, Plaintiff began treatment with Narender Gorukanti, M.D., for medical management of her severe thrombocytopenia. Tr. 258-78. Her platelet levels were initially around 10,000. Tr. 258-275. After being placed on a high dose of Prednisone, her platelet count increased to 23,000. Tr. 258, 276-77. She was slowly tapered off Prednisone when her platelet levels reached 200,000-300,000, but was restarted on a low dosage when her platelet count dropped down to 88,000. Tr. 258-63. After Plaintiff's platelet count increased to 149,000, Dr. Gorukanti decreased her dose of Prednisone to 5 mg daily. Tr. 259-61. In August 2006, he opined that Plaintiff's tiredness was most likely a result of the steroids. Tr. 271. On September 11, 2006, he noted Plaintiff may need a bone marrow biopsy in the future. Tr. 264. As of January 2007, Plaintiff stated she was unable to continue working and was planning on filing for disability. Tr. 258. At this time, Plaintiff had an ultrasound of spleen performed. Tr. 248. Results revealed no masses or significant abnormalities. Tr. 248, 296, 427.

In a Physical Residual Functional Capacity ("RFC") Assessment dated February 27, 2007, Jerry Thomas, M.D., reviewed Plaintiff's medical records and determined that she could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, and stand/walk for about six hours in an

eight-hour workday.  Tr. 282-89.  Dr. Thomas found no postural, manipulative, visual, communicative, or environmental limitations, and determined that Plaintiff could perform light work.  Tr. 282-89.  This assessment was affirmed by Ronald Crow on July 8, 2007.  Tr. 303.

In March 2007, Dr. Gorukanti noted Plaintiff's improvement while on 5 mg of Prednisone. Tr. 292-93.  At this point, Plaintiff was clinically stable, with her platelet count at 299,000.  Tr. 292-93, 315.  Plaintiff was "doing fairly well" and denied any bruising or bleeding, but still complained of weakness.  Tr. 292.  Dr. Gorukanti was slowly tapering Plaintiff off Prednisone and seeing her for monthly follow-ups.  Tr. 291.  As of June 2007, Plaintiff's platelet count was stable without any therapy.  Tr. 329.  In January 2008, Dr. Gorukanti noted that Plaintiff's platelet count had normalized and she was asymptomatic.  Tr. 327, 331-32, 543-44.  At this time, he discharged Plaintiff from his care and told her to follow-up with her family physician.  Tr. 332.

On March 15, 2007, Plaintiff went to St. Edward's emergency room with complaints of right lower back pain after hitting her back on a foosball table.  Tr. 308-14, 469-70.  Upon examination, Plaintiff was tender in the right lumbosacral area.  Tr. 313, 469.  There was no visible evidence of bruising or abnormality.  Tr. 313, 469.  Deep tendon reflexes were intact and Plaintiff had a negative straight leg raising test.  Tr. 313, 469.  She was neurovascularly intact in both lower extremities.  Tr. 313, 469.  Plaintiff was assessed with acute low back pain and given prescriptions for Flexeril and Lorcet.  Tr. 314, 470.

On September 18, 2008, Plaintiff went to Western Arkansas Counseling and Guidance Center ("WACGC").  She reported a long history of anxiety and panic attacks.  Tr. 336.  Plaintiff reported a history of sexual abuse as a child.  Tr. 336.  She had been married, but was currently divorced, and her ex-husband had custody of their two children.  Tr. 336.  Dinora Reyes, a licensed professional

counselor, recommended that Plaintiff receive individual therapy. Tr. 336. However, there is no indication that Plaintiff received any additional counseling at WACGC following her initial appointment. Tr. 336.

On October 22, 2008, Plaintiff went to Ronald Myers, M.D., with complaints of back and leg pain. Tr. 334. X-rays of Plaintiff's lumbar spine revealed mild degenerative changes evidenced by anterior osteophytes at L1, L2, L3, and L4. Tr. 339, 378. However, no acute abnormalities were noted. Tr. 339. X-rays of Plaintiff's sacrum and coccyx revealed mild angulation of the coccygeal segments, which was considered a congenital variant. Tr. 340, 377. No definite fractures or sclerotic or destructive changes were identified. Tr. 340. Additionally, Plaintiff's SI joints were intact. Tr. 340. A presumed phlebolith was noted in the right pelvis. Tr. 340. Plaintiff was given prescriptions for Zanaflex and Lorcet. Tr. 334.

On November 25, 2008, Dr. Myers completed a Medical Source Statement (Physical). Tr. 616-18. He determined that Plaintiff could sit for a total of three hours, stand for a total of three hours, and walk for a total of two hours in an eight-hour workday, although he noted that Plaintiff could only stand/walk for a total of two hours in an eight-hour workday. Tr. 616. Dr. Myers also found that Plaintiff could occasionally lift/carry six to ten pounds, could perform simple grasping, pushing and pulling, and fine manipulation with both hands, and could use both feet repetitively. Tr. 617. He determined Plaintiff could frequently reach above her head, occasionally bend, squat, crawl, climb, and kneel, and never stoop or crouch. Tr. 617. Environmentally, he determined that Plaintiff could occasionally be exposed to marked temperature changes and noise, but could never be exposed to unprotected heights, moving machinery, dust, fumes, or gases, and driving equipment. Tr. 617. He also noted that Plaintiff experienced severe pain, which would require unscheduled

breaks and result in Plaintiff missing more than four workdays per month.  Tr. 618.

On November 20, 2008, Plaintiff saw Patricia J. Walz, Ph.D., for a mental diagnostic examination.  Tr. 601-09.  She reported a history of panic attacks, anxiety and depression, for which she was currently taking Xanax.  Tr. 601-04.  As a child, Plaintiff reported being physically, mentally and sexually abused by her father, who later went to prison.  Tr. 602.  She was also involved in a serious car accident in 2001, which resulted in chronic back pain.  Tr. 601.  When asked about work, Plaintiff reported earning her GED and working as an assembly line operator and a housekeeper.  Tr. 603.  She stopped working in November 2006 due to her blood disorder, but occasionally cleaned apartments for her landlord.  Tr. 603.  She had two grown children and had been divorced for several years.  Tr. 603.  At home, Plaintiff reported needing no assistance with activities of daily living.  Tr. 604.  She could shop alone, cook and make a complex meal, but did not do chores very often.  Tr. 604.

Upon examination, Plaintiff was sad and had a flat affect.  Tr. 604.  She denied any suicidal or homicidal ideation.  Tr. 601.  Thinking was logical and goal-oriented and thought content was intact, with no evidence of delusions.  Tr. 604.  Plaintiff attended and persisted well, but cognition was slow.  Tr. 606.  She was able to name the date, time, and answer personal and general knowledge questions.  T. 605.  She was able to recall six digits forward and four backward.  Tr. 605.  After a five minute interference task, she freely recalled three of three words.  Tr. 605.  Dr. Walz estimated Plaintiff's intellectual functioning to be within the low average to average range.  Tr. 605.  She diagnosed Plaintiff with dysthymia and panic disorder with agoraphobia, and estimated Plaintiff's Global Assessment of Functioning ("GAF") score at 45-50.  Tr. 606.

In a Medical Source Statement (Mental), Dr. Walz found that Plaintiff was markedly

impaired in her ability to interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. Tr. 607-09. She found mild limitation in all other categories. Tr. 607.

### III.    Applicable Law

The Court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the Court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be eligible for disability insurance benefits, a claimant has the burden of establishing that he is unable to engage in any substantial gainful activity due to a medically determinable physical or mental impairment that has lasted, or can be expected to last, for no less than twelve months. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step sequential evaluation process to all disability claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits his physical or mental ability to perform basic work activities;

(3) whether the claimant has an impairment that meets or equals a disabling impairment listed in the regulations; (4) whether the claimant has the RFC to perform his past relevant work; and (5) if the claimant cannot perform his past work, the burden of production then shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform given his age, education, and work experience. *Pearsall*, 274 F.3d at 1217; 20 C.F.R. § 404.1520(a), 416.920(a). If a claimant fails to meet the criteria at any step in the evaluation, the process ends and the claimant is deemed not disabled. *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004).

**IV.   Discussion**

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity at any point since November 21, 2006, the alleged onset date. Tr. 60. She did, however, note that Plaintiff received unemployment benefits in the first, second, and third quarters of 2007. Tr. 60. At step two, the ALJ found that Plaintiff suffered from thrombocytopenia, hypothyroidism, mild degenerative changes in her lumbar spine, and anxiety disorder, all of which were considered severe impairments under the Act. Tr. 60-61. At step three, she determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 61-63. At step four, the ALJ found that Plaintiff had the RFC to perform light work, except that she could not engage in sustained driving, climb scaffolds, ladder, or ropes, or work at unprotected heights or around dangerous machinery. Tr. 63. Further, the ALJ found that Plaintiff could only occasionally climb ramps and stairs, stoop, bend, crouch, crawl, kneel and balance, and could only engage in work that involves non-complex, simple instructions with little judgment, where work is routine, repetitive, and learned by rote with few variables, supervision is concrete, direct, and

specific, and contact with the public and coworkers is superficial only. Tr. 63-67. Based on this RFC assessment, the ALJ determined Plaintiff was capable of performing her past relevant work as a motel maid. Tr. 67-68. Thus, at step four, the ALJ determined Plaintiff was not under a disability from the alleged onset date through the date of the administrative decision. Tr. 68.

On appeal, Plaintiff contends that the ALJ: (1) failed to give proper weight to Dr. Myers' Medical Source Statement; (2) improperly determined her RFC; and (3) improperly dismissed her subjective complaints. *See* Pl.'s Br. 8-20.

A. Dr. Myers' Medical Source Statement

Plaintiff asserts that the ALJ improperly dismissed Dr. Myers' opinion. *See* Pl.'s Br. 8-11. We disagree. The ALJ gave specific reasons for the weight given to Dr. Myers' opinion. First, despite Plaintiff's contention, Dr. Myers saw Plaintiff only once before completing his medical source statement. Tr. 334. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (the assessment of a doctor who evaluates a claimant once or not at all does not usually constitute substantial evidence). Plaintiff argues that Dr. Myers should have been considered a treating physician because he saw her at Brackman Family Practice in 2000. *See* Pl.'s Br. 9. However, she mistakenly cites to a medical release form rather than any actual treatment records. Tr. 341. Upon reviewing the record, we find no treatment records from Dr. Myers prior to October 22, 2008. Tr. 334. Thus, he did not qualify as a treating physician and was not entitled to any special deference.

Assuming, *arguendo*, that Dr. Myers was a treating physician, the ALJ properly dismissed his opinion as being both internally inconsistent and inconsistent with the medical evidence of record. *See Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007) (ALJ may credit other medical evaluations over treating physician when other assessments are supported by better medical evidence

or where treating physician renders inconsistent opinions). Dr. Myers determined Plaintiff could sit for a total of three hours, stand for a total of three hours, and walk for a total of two hours in an eight-hour workday, yet later noted that Plaintiff could only stand/walk for a combined total of two hours in an eight-hour workday. Tr. 616; *Haggard v. Apfel*, 175 F.3d 591, 595 (8th Cir. 1999) (treating physician's opinion was not supported by his own findings or the diagnostic data). He also found that Plaintiff could only occasionally bend, squat, crawl, climb, and kneel, never stoop or crouch, and would miss more than four workdays per month due to pain. Tr. 618. However, Dr. Myers did not explain the basis for such restrictive findings. *Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008) ("a treating physician's opinion does not deserve controlling weight when it is nothing more than a conclusory statement."). Moreover, his severely limiting RFC assessment is simply not supported by the medical evidence of record. X-rays of Plaintiff's lumbar spine, taken on October 24, 2008, revealed mild degenerative changes, but no acute abnormalities. Tr. 339. X-rays of Plaintiff's sacrum and coccyx revealed mild angulation of the coccygeal segments, yet no definite fractures or sclerotic or destructive changes were identified and Plaintiff's SI joints were intact. Tr. 340. These findings simply do not support Dr. Myers' overly restrictive RFC assessment. For these reasons, the ALJ properly considered Dr. Myers' opinion.

    B. <u>Plaintiff's RFC</u>

Plaintiff contends the ALJ made an improper RFC assessment concerning her physical and mental limitations. *See* Pl.'s Br. 11-18. We disagree. At the fourth step of the evaluation, a disability claimant has the burden of establishing his RFC. *Eichelberger*, 390 F.3d at 591; *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004). A claimant's RFC is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC based

on "all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Masterson*, 363 F.3d at 737. The Eighth Circuit has stated that "a claimant's residual functional capacity is a medical question." *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001). Thus, although the ALJ bears the primary responsibility for determining a claimant's RFC, there must be "some medical evidence" to support the ALJ's determination. *Eichelberger*, 390 F.3d at 591; *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir 2000).

  The ALJ properly addressed Plaintiff's physical limitations. First, the medical evidence of record reveals that although Plaintiff suffers from thrombocytopenia, or low blood platelets, her condition has markedly improved with treatment. *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (an impairment that can be controlled by treatment or medication is not considered disabling). In fact, as of June 2007, Plaintiff's platelet count was stable without any steroid therapy. Tr. 329. In January 2008, Dr. Gorukanti noted that Plaintiff's platelet count had completely normalized and she was asymptomatic. Tr. 327, 331-32, 543-44. Similarly, Plaintiff's hypothyroidism is medically controlled with Synthroid. *Id.* Although Plaintiff underwent thyroid surgery in the past, there is no medical evidence that she experienced any thyroid difficulties during the relevant time period. Tr. 234.

  Additionally, Plaintiff's back impairments were accurately taken into account by the ALJ. The medical evidence reflects that although Plaintiff suffers from chronic low back pain secondary to a motor vehicle accident, she has not sought regular medical treatment for this condition. *See Brown v. Apfel*, 221 F.3d 1341 (8th Cir. 2000) (a failure to seek regular medical treatment is inconsistent with allegations of disabling pain). Plaintiff suffered cervical, parascapular, and

lumbosacral strains as a result of the accident. Tr. 347-72. X-rays of Plaintiff's cervical spine were within normal limits. Tr. 354. She was treated with pain medication, muscle relaxers, anti-inflammatories, electromuscle stimulation, and physical therapy. Tr. 347-72. Following her initial treatment, Plaintiff did not seek medical attention for chronic back pain again until March 2007, when she presented to the emergency room after hitting her back on a foosball table. Tr. 308-14, 469-70. Upon examination, Plaintiff was tender in the right lumbosacral area, but there was no visible evidence of bruising or abnormality. Tr. 313, 469. Deep tendon reflexes were intact and Plaintiff had a negative straight leg raising test. Tr. 313, 469. She was neurovascularly intact in both lower extremities. Tr. 313, 469. Moreover, x-rays of Plaintiff's lumbar spine, taken on October 24, 2008, revealed only mild degenerative changes. Tr. 339. These relatively mild findings are simply inconsistent with the degree of limitation Plaintiff alleges. Additionally, although Plaintiff alleges she cannot afford medical treatment, she has not sought treatment at any low-cost clinics or charitable organizations in the area, nor has she provided evidence that she was denied medical care due to her financial condition. *Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992). For these reasons, substantial evidence supports the ALJ's physical RFC assessment.

In addition to her physical impairments, Plaintiff also suffers from anxiety and depression. She reportedly takes Xanax for anxiety, which has alleviated some of her symptoms. Tr. 27; *Schultz*, 479 F.3d at 983 (an impairment that can be controlled by treatment or medication is not considered disabling). Moreover, she did not seek regular mental health treatment during the relevant time period. *See Kirby v. Astrue*, 500 F.3d 705, 708-09 (8th Cir. 2007) (claimant had not sought formal treatment by a psychiatrist, psychologist, or other mental health care professional). On September 18, 2008, Plaintiff went to WACGC, where a counselor recommended individual therapy. Tr. 336.

However, there is no indication that Plaintiff received any additional counseling at WACGC following her initial appointment. Tr. 336.

At her attorney's request, Plaintiff saw Dr. Walz for a mental diagnostic examination on November 20, 2008. Tr. 601-09. Upon examination, Plaintiff was sad and had a flat affect. Tr. 604. She denied any suicidal or homicidal ideation. Tr. 601. Thinking was logical and goal-oriented and thought content was intact, with no evidence of delusions. Tr. 604. Plaintiff attended and persisted well, but cognition was slow. Tr. 606. Dr. Walz estimated Plaintiff's intellectual functioning to be within the low average to average range. Tr. 605. She diagnosed Plaintiff with dysthymia and panic disorder with agoraphobia, and estimated Plaintiff's GAF score at 45-50.[1] Tr. 606. In a Medical Source Statement (Mental), Dr. Walz found that Plaintiff was markedly impaired in her ability to interact appropriately with the public, supervisors, and co-workers, and respond appropriately to usual work situations and to changes in a routine work setting. Tr. 607-09. She found mild limitation in all other categories. Tr. 607.

The ALJ discounted Dr. Walz's opinion for several valid reasons. First, it appears that Plaintiff saw Dr. Walz to bolster her claim for disability benefits rather than to obtain medical treatment. *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995). Aside from one appointment at WACGC, Plaintiff sought no formal mental health treatment for her allegedly disabling anxiety. *See Kirby*, 500 F.3d at 708-09. Moreover, Dr. Walz's opinion is inconsistent with the medical evidence as a whole. Although Dr. Walz found marked limitations in Plaintiff's ability to interact appropriately with others, she found that Plaintiff communicated in a socially adequate manner. Tr.

---

[1] A GAF score of 41-50 indicates "serious symptoms or any serious impairment in social, occupational, or school functioning." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed., 2000).

606. Additionally, Plaintiff relied on her family and friends to drive her to interviews while she was receiving unemployment and has maintained a close relationship with her long-term boyfriend and her two sons. Tr. 171, 190. Finally, although Dr. Walz estimated Plaintiff's GAF score at 45-50, this score, standing alone, is not persuasive in light of Plaintiff's lack of mental health treatment and reported activities. For these reasons, the medical evidence supports the ALJ's mental RFC assessment.

After considering all the relevant evidence, we conclude that substantial evidence supports the ALJ's RFC determination. *Roberts v. Apfel,* 222 F.3d 466, 469 (8th Cir. 2000) (ALJ bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence). None of Plaintiff's medical records support her contention that she is totally disabled. Plaintiff failed to demonstrate that she is unable to perform substantial gainful activity. *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant"). Accordingly, substantial evidence supports the ALJ's determination that Plaintiff can perform her past relevant work as a motel maid.

### C. Plaintiff's Subjective Complaints

Plaintiff contends the ALJ failed to make express credibility determinations regarding her subjective allegations. *See* Pl.'s Br. 18-20. We disagree.

When evaluating a claimant's subjective allegations, the ALJ must consider all evidence relating to: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) any precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ "may not discount a claimant's allegations of disabling pain solely because the

objective medical evidence does not fully support them." *Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (quoting *Goff*, 421 F.3d at 792). However, subjective complaints may be discounted if there are inconsistencies in the medical evidence as a whole. *Id.* A court "will not disturb the decision of an ALJ who considers, but for good cause expressly discredits, a claimant's complaints of disabling pain." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (quoting *Goff*, 421 F.3d at 792).

It is well-settled that an ALJ need not explicitly discuss each *Polaski* factor; it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). In discounting Plaintiff's subjective complaints, the ALJ noted the effectiveness of medication in controlling Plaintiff's symptoms. Tr. 64-65; *see Medhaug v. Astrue*, 578 F.3d 805, 816 (8th Cir. 2009) (an impairment is not considered disabling if it is adequately controlled with medication). Medical records and testimony illustrate that Plaintiff's use of Xanax improved her anxiety and Prednisone stabilized her platelet count. Tr. 27, 329. Additionally, Plaintiff's lack of treatment is inconsistent with her allegations of disabling back pain and anxiety. *Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) ("A claimant's allegations of disabling pain may be discredited by evidence that the claimant has received minimal medical treatment and/or has taken only occasional pain medications."). Finally, Plaintiff received unemployment benefits for most of 2007 and still occasionally cleans apartments for her landlord. Tr. 212; *Cox v. Apfel*, 160 F.3d 1203, 1208 (8th Cir. 1998) (the acceptance of unemployment benefits, although not dispositive, is facially inconsistent with a claim of disability). These are all valid considerations, and the ALJ made no error in assessing Plaintiff's credibility.

Plaintiff's treatment history, receipt of unemployment benefits, reported activities, and her seeming improvement with medication cast doubt on the validity of her testimony. Here, the ALJ cited the proper standard, considered the factors in conjunction with Plaintiff's testimony, and then properly discounted Plaintiff's subjective complaints. For these reasons, substantial evidence supports the ALJ's decision to discredit Plaintiff's subjective complaints.

## V.     Conclusion

Having carefully reviewed the record, the undersigned finds that substantial evidence supports the ALJ's determinations at each step of the disability evaluation process, and thus the decision should be affirmed. Accordingly, Plaintiff's complaint should be dismissed with prejudice.

ENTERED this 16th day of February 2011.

*/s/ J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE